United States District Court
Middle District of Florida
Jacksonville Division

NEW YORK LIFE INSURANCE COMPANY,

     *Plaintiff,*

v.                              NO. 3:20-cv-560-J-34PDB

REBECCA KNEELAND ET AL.,

     *Defendants.*

---

## Report and Recommendation

To distance itself from competing claims to a $25,000 death benefit under a group life insurance policy held by decedent Melba Blakenship, New York Life Insurance Company brings this statutory interpleader action against eight claimants or potential claimants, including Melba's six children: Janice Crawford, Hubert "Dwaine" Crummey, James "Michael" Crummey, Randy Crummey, Walter Wayne Crummey, Rebecca Kneeland, the Estate of Melba Blankenship, and Oxley-Heard Funeral Directors.[1] Doc. 1.

---

[1]Because four defendants share a surname, this report and recommendation uses first names.

In the complaint, New York Life names "Oaxley-Heard Funeral Directors," Doc. 1, but an invoice from the company, attached as an exhibit to the complaint, shows the company is "Oxley-Heard Funeral Directors," Doc. 1-1. This report and recommendation uses the correct spelling.

Half of the defendants—Janice, Randy, Walter, and Oxley-Heard Funeral Directors—failed to answer the complaint. On motions by New York Life, Docs. 29–32, the clerk entered defaults against them, Docs. 33–36.

Now before the Court is New York Life's motion for (1) default judgment against those defendants, (2) a discharge of liability, (3) a permanent injunction enjoining all defendants from beginning any other action or proceeding seeking payment of the death benefit, and (4) dismissal of New York Life from this action with prejudice. Doc. 51. The defendants who have appeared—Dwaine, Michael, Rebecca, and the Estate—have no objection. No one has responded to the motion, and the time to do so has passed.

Besides addressing the merits of the motion, the undersigned sua sponte addresses the probate exception to subject-matter jurisdiction and the *Colorado River* abstention doctrine because a proceeding involving the Estate remains open in the probate court in and for Clay County, Florida.[2]

---

[2]At any stage of a case and on its own, a court may judicially notice a fact that cannot be reasonably disputed because it either is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)–(d). State court records generally satisfy that standard. *Paez v. Sec'y, Fla. Dep't of Corr.*, 931 F.3d 1304, 1306–07 (11th Cir. 2019).

Online records of the Clay County Clerk of Court show the Estate remains open. *See* No. 2017CP399, https://inquiry.clayclerk.com/Home.aspx/Search (last accessed on January 7, 2021, and attached to this report and recommendation). During a telephone conference on January 8, 2021, the parties verified that the Estate remains open, and counsel for the Estate suggested the probate court awaits a decision from this Court. A transcript of the conference has not been transcribed, but anyone can obtain a transcript by contacting the undersigned's courtroom deputy.

## I.    Background

### A.    *Pleadings*

In the complaint, New York Life alleges these facts.

Rebecca (in her individual capacity) is a citizen of West Virginia. Doc. 1 ¶ 2. The other individual defendants are citizens of Georgia. Doc. 1 ¶¶ 3–7. The Estate, Rebecca (in her capacity as the personal representative of the Estate), and Oxley-Heard Funeral Directors are citizens of Florida. Doc. 1 ¶¶ 2, 8, 9.

Melba was an AARP member and eligible to apply for life insurance coverage through a group insurance policy issued by New York Life to the Trustee of AARP Life Insurance Trust. Doc. 1 ¶ 12.

Melba applied for and was issued life insurance under the policy through certificate A2984335. Doc. 1 ¶ 13; Doc. 1-1 (policy). The policy provides a death benefit when the insured dies. Doc. 1-1 at 6. With riders, the death benefit totals $25,000. *See* Doc. 1-1 at 2 (January 16, 2007, $10,000 base); Doc. 1-1 at 16 (August 16, 2015, $5,000 rider); Doc. 1-1 at 25 (September 16, 2015, $10,000 rider).

Through a form executed on July 13, 2015, Melba designated her husband as the beneficiary. Doc. 1 ¶ 14; Doc. 1-2 (designation form).

Melba's husband died on June 27, 2017. Doc. 1 ¶ 17. She died six weeks later, on August 12, 2017. Doc. 1 ¶ 15; Doc. 1-3 (death certificate). She is survived by six adult children, all of whom are named as defendants. Doc. 1 ¶¶ 19, 20; Doc. 1-4 (survivorship affidavits).

Upon Melba's death, the $25,000 death benefit became due. Doc. 1 ¶ 16. The policy provides:

> If no beneficiary is designated or no beneficiary survives the INSURED, the benefit will be payable to the INSURED's estate, or at OUR option to the INSURED's surviving relative(s) in the following order of survival: spouse; children equally; parents equally; or brothers and sisters equally.

Doc. 1 ¶ 18; Doc. 1-1 at 8.

In a December 22, 2017, letter addressed to the probate court and provided to New York Life, Dwaine alleged that Rebecca had submitted false statements to the probate court in connection with her appointment as the administrator of the Estate. Doc. 1 ¶ 21; Doc. 1-5 (letter).

Through executed claim forms, the Estate and four of Melba's six children claimed the death benefit. Doc. 1 ¶¶ 22, 23, 25, 26, 28; Doc. 1-6 (December 31, 2017, claim form by Walter); Doc. 1-7 (February 23, 2018, claim form by Rebecca on behalf of the Estate); Doc. 1-8 (March 6, 2018, letter by counsel on behalf of the Estate); Doc. 1-9 (March 11, 2018, claim form by Janice); Doc. 1-10 (March 12, 2018, claim form by Dwaine); Doc. 1-12 (March 19, 2018, claim form by Michael).

In a March 17, 2018, letter addressed to the probate court and provided to New York Life, Michael likewise alleged Rebecca had submitted false documents to the probate court in connection with her appointment as the administrator of the Estate, and he also alleged Melba might have been mentally incompetent when she executed documents filed in the probate court. Doc. 1 ¶ 27; Doc. 1-11 (letter).

On January 29, 2019, Oxley-Heard Funeral Directors submitted an invoice to New York Life for $14,045 for services for Melba's funeral and burial purportedly purchased by Rebecca. Doc. 1 ¶ 29; Doc. 1-13 (invoice). In a November 11, 2019, letter addressed to New York Life, counsel for the Estate asked New York Life to pay Oxley-Heard Funeral Directors directly from the death benefit, explaining Oxley-Heard Funeral Directors is a "tier 1 creditor" of the Estate. Doc. 1 ¶ 30; Doc. 1-14 (letter).

No one else has claimed the death benefit. Doc. 1 ¶ 31.

According to New York Life, it has no interest in the death benefit, it cannot determine who is entitled to the death benefit, no defendant has asked it to bring this action, it has not colluded or participated in any fraud with any defendant, and it is bringing this action on its own will "to avoid being vexed and harassed by conflicting and multiple claims." Doc. 1 ¶¶ 31, 32, 34, 36.

In its "wherefore" clause, New York Life asks the Court to enter judgment:

> (a) requiring the Defendants to answer this Complaint in Interpleader and litigate their claims between themselves for the Death Benefit;
>
> (b) enjoining the Defendants from instituting or prosecuting any proceeding in any state or United States court affecting the Death Benefit and/or the Policy;
>
> (c) requiring that the Defendants settle and adjust between themselves, or upon their failure to do so, this Court settle and adjust the claims and determine to whom the Death Benefit should be paid;
>
> (d) permitting the Company to deposit the amount of the Death Benefit, plus applicable interest, if any, into the Court or as this Court otherwise directs to be subject to the order of this Court and to be paid out as this Court shall direct;

(e) discharging the Company from any and all further liability to Defendants relating in any way to the Policy and/or the Death Benefit upon payment of the Death Benefit into the Registry of this Court or as otherwise directed by this Court;

(f) awarding the Company its attorneys' fees and costs in their entirety; and

(g) awarding the Company any other and further relief that this Court deems just and proper.

Doc. 1 at 6–7.

Rebecca and the Estate, through counsel, answered the complaint and admitted most allegations, including citizenship. Doc. 22.

Dwaine and Michael, without counsel,[3] each responded to the complaint through individual letters detailing an unfortunate tale of family feuding in the weeks before Melba's death and thereafter.[4] Docs. 27, 28. They claim

---

[3]Michael explains his wife helped him write his letter because he was in a "horrific" accident in 2018 from which he almost died and, due to tracheostomy damage, is unable to speak plainly and relies on his wife to interpret his speech. Doc. 28 at 3.

Although parties "may plead and conduct their own cases personally," 28 U.S.C. § 1654, the right to do so "is limited to parties conducting their own cases, and does not extend to non-attorney parties representing the interests of others." *FuQua v. Massey*, 615 F. App'x 611, 612 (11th Cir. 2015) (internal quotation marks omitted).

The undersigned perceives from the letter that Michael's wife is merely helping him convey his thoughts on paper, not trying to represent him, thus not engaging in an unauthorized practice of law.

[4]In the letters, Dwaine and Michael allege feuding over the treatment of Melba and her property during her dying days and over her funeral and burial, with Rebecca and Randy on one side and Janice, Dwaine, and Michael on the other. With slightly varying details, Dwaine and Michael contend Rebecca, sometimes with Randy, isolated Melba at a rehabilitation center while she was recovering from broken bones by taking her purse and her clothes (even her underclothes) and informing staff no visitors were allowed; had Melba sign legal documents while under the influence of pain medications and surgical anesthesia; obtained a quitclaim deed for Melba's real property and then sold the property shortly before or after her death for $55,000; sold Melba's personal property without her knowledge and started the process for a future estate sale of her other personal property without her knowledge; controlled Melba's bank accounts (one with $4,000 and one with $11,000) despite her stated desire they cease oversight of her affairs and despite having given Dwaine and

6

Rebecca falsely told New York Life she is the sole heir. Doc. 27 at 1; Doc. 28 at 1. Dwaine states he is "not opposed to the courts making the decision to disburse any funds that may be available." Doc. 27 at 1. Michael similarly states, "I am in favor of the courts making the decision to disperse any funds that may be available." Doc. 28 at 1. Both believe the death benefit and the assets of the Estate should be divided among siblings, Rebecca should pay the amount owed to Oxley-Heard Funeral Directors, and Rebecca should provide the Estate the value of real property and bank accounts that belonged to Melba but ended up in Rebecca's hands, outside of the Estate. Docs. 27, 28. Dwaine adds he cannot afford a lawyer, has no desire to fight, and just wants the saga over. Doc. 27 at 2. Michael adds, "As I write this letter[,] … my mom, Melba Blankenship, has been deceased three years, and it is my prayer that this matter is finished so she can rest in peace." Doc. 28 at 3.

## B.   *Deposit into Court's Registry*

Evaluating subject-matter jurisdiction sua sponte at the outset, the Court found a sufficient amount in controversy, found the required minimal diversity, determined all that remained for subject-matter jurisdiction was a deposit, and ordered New York Life to deposit the death benefit and interest into the Court's registry. Doc. 4. New York Life complied, depositing $31,275.26 into the Court's registry. Doc. 8.

---

Michael power of attorney over her affairs; and accosted Melba by screaming at her and flicking her nose, with staff requiring Rebecca to leave during the ruckus because she had a gun in her purse. Doc. 27 at 1–3, Doc. 28 at 1–3. Dwaine and Michael contend the two sides made separate arrangements with Oxley-Heard Funeral Directors for Melba's funeral and burial, but Rebecca made the decisions without input from all siblings and agreed to be financially responsible for the costs. Doc. 27 at 3. Dwaine and Michael assert neither they nor their families felt safe enough to attend Melba's funeral. Doc. 27 at 3.

### C.   Defaults

To obtain defaults against Janice, Randy, Walter, and Oxley-Heard Funeral Directors, New York Life filed (1) declarations of its counsel provided under penalty of perjury, (2) waivers of service of process for Janice and Oxley-Heard Funeral Directors, and (3) affidavits of process servers provided under penalty of perjury stating Randy and Walter had been personally served with process. Docs. 6, 20, 24, 25, 29–32, 70.

In the declarations, counsel details the waivers and service of process; observes the defaulting defendants failed to answer or otherwise appear and the time to do so has expired; and states, for each defaulting defendant, "To the best of the affiant's knowledge and belief, Defendant … is not currently in the United States Armed Forces or entitled to relief under the provisions of the Servicemembers' Relief Act; Defendant … is not a minor, nor declared legally incompetent." Doc. 29 ¶ 6; Doc. 30 ¶ 6; Doc. 31 ¶ 6; Doc. 32 ¶ 6.

### D.   Current Motion

In the current motion, New York Life moves for default judgments against the defaulting defendants. Doc. 51 at 4–6. It seeks no money from them and takes no position on whether any are entitled to the death benefit. Doc. 51 at 6. It contends that if final judgment is not entered against them, it will remain exposed to multiple claims. Doc. 51 at 6. It contends no hearing is necessary because the Court need not conduct an accounting, determine damages, establish the truth of the allegations, or investigate any other matter. Doc. 51 at 6.

New York Life also moves for (1) discharge of liability, (2) a permanent injunction enjoining all defendants from beginning any other action or

proceeding seeking payment of the death benefit, and (3) dismissal of New York Life from this action with prejudice. Doc. 51.

Without authorization, New York Life provides a proposed order that includes language for the dismissal and the permanent injunction:

> (2) The Company is hereby discharged from any and all liability to Defendants, Rebecca Kneeland, individually and as Personal Representative of the Estate of Melba Blankenship, Randy Crummey, Walter Wayne Crummey, James Michael Crummey, Janice Latrelle Crawford, Hubert Dwaine Crummey, and Oxley-Heard Funeral Directors (collectively, "Defendants") relating in any way to the life insurance proceeds due ("Death Benefit") as a result of the death of Melba Blankenship pursuant to individual life insurance certificate number A2984335 ("Policy"), which funds have been placed on deposit with the registry of the Court[.]

> (3) The Defendants are hereby permanently enjoined from making any further actual or implied claims, demands and causes of action, asserted or unasserted, express or implied, foreseen or unforeseen, real or imaginary, suspected or unsuspected, known or unknown, liquidated or unliquidated, of any kind or nature or description whatsoever, that the Defendants, jointly and severally, ever had, presently have, may have, or claim or assert to have, or hereinafter have, may have, or claim or assert to have, against the Company with respect to the Death Benefit and/or the Insured's coverage under the Policy[.]

Docs. 51-1 at 1–2, 60-1 at 1–2.[5]

New York Life does not request a "no just reason for delay" finding or provide law or analysis about the finding in its motion and memorandum of law but includes the following language in its proposed order: "(6) This ORDER

---

[5]"No proposed order … may be submitted unless authorized by the assigned judge." U.S. District Court, M.D. Fla., Admin. Procedures for Electronic Filing, § IV.A.4; *see also* Local Rule 3.01(f) (eff. Feb. 1, 2021) ("NO PROPOSED ORDER. Unless otherwise permitted by these rules, no party may submit a proposed judgment or other order without leave.").

shall be deemed a final judgment in accordance with Fed. R. Civ. P. 54(b), there being no just reason for delay." Doc. 51-1 at 2; Doc. 60-1 at 2.

New York Life requests no attorney's fee considering the "relatively modest amount of funds at issue" and the absence of objection to the motion.[6] Doc. 51 at 9.

New York Life represents that its counsel conferred with each appearing defendant and no appearing defendant objects to the requested relief. Doc. 51 at 10. New York Life explains the defaulting defendants "were not consulted for their consent." Doc. 51 at 10.

## E.     *Supplemental Declaration*

At the undersigned's direction, Doc. 67, New York Life submitted a supplemental declaration about the military status of the individual defaulting defendants, Doc. 68.

---

[6]New York Life states, "It is well-settled in the Eleventh Circuit that the district court has authority to award costs and reasonable attorneys' fees to stakeholders in Interpleader actions." Doc. 51 at 8.

Although that statement is correct, "courts have determined that attorneys' fees are not warranted … when a stakeholder's interpleader claim arises out of the normal course of business." *In re Mandalay Shores Coop. Hous. Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994). "[T]his standard typically is applied to insurance companies[.]" *Id.* "The principle … is simple: an insurance company … avails itself of interpleader to resolve disputed claims to insurance proceeds—disputes that arise with some modicum of regularity." *Id.* "In a sense, the insurance company will use interpleader as a tool to allocate proceeds and avoid further liability." *Id.* "As the costs of these occasional interpleader actions are foreseeable, the insurance company easily may allocate the costs of these suits to its customers." *Id.* "Unlike innocent stakeholders who unwittingly come into possession of a disputed asset, an insurance company can plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award." *Id.*

Because New York Life requests no attorney's fee, this Court need not decide whether the normal-course-of-business standard should apply.

In the declaration, counsel for New York Life, under penalty of perjury, declares that, using personal information provided by Janice and Walter in their respective claim forms, she verified with the Department of Defense Manpower Data Center that neither is "currently in the United States Armed Forces or entitled to relief under the provisions of the Servicemembers' Relief Act." Doc. 68 ¶¶ 5, 6. She attaches proof. Doc. 68-1 (Department of Defense "Status Report Pursuant to Servicemembers Civil Relief Act" for Janice); Doc. 68-2 (same for Walter).

For Randy, counsel declares New York Life is unable to determine whether he "is currently in the United States Armed Forces or otherwise entitled to relief under the provisions of the Servicemembers' Relief Act" because he did not complete a claim form that would have provided his social security number or complete date of birth. Doc. 68 at 2–3. She adds her public records search and documents submitted to New York Life by his siblings show he was born in 1958. Doc. 68 at 3.

At a telephone conference on January 8, 2021, Rebecca confirmed Randy currently is not in the military, and her siblings did not contend otherwise.[7] Doc. 71. The siblings provided two dates of birth for him, one day apart. Using both dates, counsel obtained and filed proof that he currently is not "in the United States Armed Forces or entitled to relief under the provisions of the Servicemembers' Relief Act." Doc. 70; Doc. 70-2 (Department of Defense

---

[7]As stated in footnote 2, a transcript of the conference has not been transcribed, but anyone can obtain a transcript by contacting the undersigned's courtroom deputy. Dates of birth will be redacted in accordance with Federal Rule of Civil Procedure 5.2, which protects private information in filings made with the Court.

"Status Report Pursuant to Servicemembers Civil Relief Act" for Randy); 70-3 (same, using alternative date).

## F.    *Mediation*

The Court entered a case management and scheduling order and directed the parties to participate in mediation by December 11, 2020. Doc. 45. The parties scheduled the mediation for December 1, 2020, before Mattox Hair. Doc. 56. Hair cancelled the mediation because some participants could not attend in person or by video teleconference, and Hair asked the parties to select another mediator. Doc. 63.

Considering Hair's request, the relatively small amount in controversy, and the undersigned's willingness to allow participants to appear by telephone if unable to appear in person or by video teleconference, the undersigned proposed conducting a settlement conference, and all appearing parties agreed to proceed in that manner. The settlement conference is scheduled for January 20, 2021, with New York Life, as a disinterested stakeholder, excused from attending.

A decision on the pending motion ("phase one" of the interpleader action, described below) is necessary regardless of the outcome of the settlement conference ("phase two" of the interpleader action, described below).[8]

---

[8]In an interpleader action, a decision in the first phase and a settlement in the second phase is common. *See, e.g.*, *Metro. Life Ins. Co. v. Jackson,* No. 3:11-cv-967-J-34JRK, 2013 WL 3974674, at *1 (M.D. Fla. Aug. 1, 2013)(deciding a similar stakeholder motion and directing the mediator to report the terms of settlement to enable court to enter a subsequent order directing disbursement of funds).

## II.   Law

### A.   *Interpleader*

Interpleader is an equitable device that allows a stakeholder to bring an action joining two or more adverse claimants to a single fund.[9] *In re Mandalay Shores Coop. Hous. Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994). Its purpose is to protect a stakeholder from the possibility of defending multiple claims, *Fulton v. Kaiser Steel Corp.*, 397 F.2d 580, 582–83 (5th Cir. 1968), and it is liberally applied to effectuate that purpose, *Matter of Bohart*, 743 F.2d 313, 325 (5th Cir. 1984); *Nat'l Fire Ins. Co. v. Sanders*, 38 F.2d 212, 214 (5th Cir. 1930).[10]

---

[9]About interpleader, one commentator explains:

Life insurance companies, surety companies, banks, railroads, warehouses, and other kinds of corporations doing business in several states, are frequently subjected to conflicting claims by two or more persons growing out of a single obligation previously incurred by the corporation. The equitable remedy of interpleader has long been useful for dealing with just such conflicting claims in situations where the claimants all live in the same state. The stakeholder admits liability and is anxious to pay the person rightfully entitled to payment if it can be ascertained which of the claimants is that person. Interpleader enables the stakeholder to put the money or other property in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court. Since the claimants are now enabled to assert their rights in the interpleader proceeding, an injunction is issued forbidding the claimants to bring any further proceedings directly against the stakeholder. The claimants are greatly benefited by the opportunity to settle their controversy in the interpleader, because the winning claimant can at once obtain the property in dispute from the court, which has such property in its possession or control. He is thus much better off than if he had merely obtained a judgment at law against the stakeholder, for then he would have been faced with the difficulties of finding assets and levying execution. Thus interpleader is a remedy which benefits all parties concerned.

*Zechariah Chafee, Jr., The Federal Interpleader Act of 1936*: I, 45 YALE L. J. 963, 963–64 (1936).

[10]Interpleader also protects claimants. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967) ("Were an insurance company required to await reduction of claims to judgment, the first claimant to obtain such a judgment or to negotiate a settlement might

"[I]n an interpleader action, the stakeholder is often neutral as to the outcome, while other parties press claims in the manner of a plaintiff." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 871 (2008). "Ordinarily, of course, a claimant should file an answer in interpleader, setting out his claim to the *res* in contest." *Syms v. McRitchie*, 187 F.2d 915, 919 (5th Cir. 1951).

An interpleader action can be brought in a federal district court under either (1) Federal Rule of Civil Procedure 22 if diversity jurisdiction or federal-question jurisdiction exists or (2) the interpleader statutes (28 U.S.C. §§ 1335, 1397, and 2361) if certain jurisdictional requirements are satisfied. *Fulton*, 397 F.2d at 582. The two kinds of interpleader "differ in jurisdictional requirements but not in substance."[11] *Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, LLC,* 782 F.3d 186, 192 (5th Cir. 2015).

Here, because diversity jurisdiction and federal-question jurisdiction are lacking, New York Life brings this action under the interpleader statutes. Section 1335 governs jurisdiction, § 1397 governs venue,[12] and § 2361 governs nationwide service of process and the relief a court can provide.

---

appropriate all or a disproportionate slice of the fund before his fellow claimants were able to establish their claims. The difficulties such a race to judgment pose for the insurer, and the unfairness which may result to some claimants, were among the principal evils the interpleader device was intended to remedy.").

[11]"Interpleader has long been recognized as an equitable remedy available in federal courts. … General principles of equity still apply notwithstanding the adoption of the statute, the statute having enlarged the availability of the remedy by providing special rules as to diversity of citizenship and venue, but not changing the substantive law which existed before." *Austin v. Texas-Ohio Gas Co.*, 218 F.2d 739, 745 n.6 (5th Cir. 1955).

[12]Under § 1397, an interpleader action under § 1335 "may be brought in the judicial district in which one or more of the claimants reside." 28 U.S.C. § 1397. Here, the Estate and its personal representative (Rebecca) admit Florida citizenship. Doc. 1 ¶ 8; Doc. 22 ¶ 8. Venue is proper, and no one contends otherwise.

Section 1335 gives district courts "original jurisdiction of any civil action of interpleader or in the nature of interpleader[13] filed by any … corporation … having issued a … policy of insurance … of value or amount of $500 or more" if "(1) [t]wo or more adverse claimants[] of diverse citizenship … are claiming or may claim to be entitled to … the benefits arising by virtue of any … policy … and if (2) the plaintiff has … paid … the amount due under such obligation into the registry of the court, there to abide the judgment of the court[.]" 28 U.S.C. § 1335(a). The "action may be entertained although the … claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another." *Id.* § 1335(b). The action must be conducted under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 22(b).

Section 2361 governs both nationwide service of process and the relief a district court can provide in a § 1335 interpleader action. Under § 2361, "a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court." 28 U.S.C. § 2361. The process and order "shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found." *Id.* The court "shall hear and determine the case, and may discharge

---

[13]In a "true" interpleader action, the plaintiff is a real stakeholder rather than a claimant; in an action in the nature of interpleader, the plaintiff is a stakeholder and a claimant. *Airborne Freight Corp. v. United States*, 195 F.3d 238, 240 (5th Cir. 1999); *see State of Tex. v. State of Fla.*, 306 U.S. 398, 406–07 (1939) (explaining extension of equity jurisdiction from "strict bill of interpleader" to "bill in the nature of interpleader").

the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment."[14] *Id.*

Based on § 2361, serving a summons or filing a waiver of service establishes personal jurisdiction over the defendant. *See* Fed. R. Civ. P. 4(k)(1)(C) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant … when authorized by a federal statute."); *accord Am. Gen. Life Ins. Co. v. Brothen*, 829 F. Supp. 2d 1369, 1372–73 (N.D. Ga. 2011) ("Congress granted the district courts authority to issue nationwide service of process in statutory interpleader actions. Service in a statutory interpleader action is thus sufficient to establish personal jurisdiction over the named defendant."); *Mudd v. Yarbrough*, 786 F. Supp. 2d 1236, 1242–43 (E.D. Ky. 2011) ("Courts are clear that service of process [in a statutory interpleader action] is sufficient to establish personal jurisdiction over [the defendant].").

"An interpleader action typically proceeds in two stages." *Klayman v. Judicial Watch, Inc.*, 650 F. App'x 741, 743 (11th Cir. 2016) (citing *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009)). In the first stage, the court determines whether interpleader is an appropriate mechanism for resolving the dispute and whether to discharge the stakeholder from further liability to the claimants. *Id.* Discharge is appropriate when the stakeholder is disinterested, i.e., "it ha[s] no interest in the outcome of the dispute between the claimants." *Ohio Nat'l Life Assurance Corp. v. Langkau ex rel. Estate of*

---

[14]The anti-injunction statute provides, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The statute does not apply to an interpleader action under § 1335. *Mitchum v. Foster*, 407 U.S. 225, 233 (1972).

*Langkau*, 353 F. App'x 244, 249 (11th Cir. 2009). In the second stage, the court evaluates rights to the interpleaded fund. *Klayman*, 650 F. App'x at 743.

During the first stage, the party seeking interpleader must establish it is an appropriate mechanism for resolving a dispute. *Dunbar v. U.S.*, 502 F.2d 506, 511 (5th Cir. 1974). "Although interpleader is available to a stakeholder even though no action has been brought against him nor any formal demand made upon him by some or all of the potential claimants, a prerequisite for the action is that the party requesting interpleader demonstrate that he has been or may be subjected to adverse claims." *Id.* (internal citations omitted). "A successful interpleader suit results in the entry of a discharge judgment on behalf of the stakeholder; once the stakeholder turns the asset over to the registry of the court, all legal obligations to the asset's claimants are satisfied." *Mandalay*, 21 F.3d at 383.

A district court's decision to grant injunctive relief in an interpleader action is discretionary.[15] *McBride v. McMillian*, 679 F. App'x 869, 871 (11th

---

[15]Outside the interpleader context, "[a]n injunction is a drastic and extraordinary remedy" that "should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). For a permanent injunction, a movant ordinarily must establish four elements: (1) the movant likely will suffer an irreparable injury absent an injunction; (2) the remedies at law—such as monetary damages—are inadequate to compensate for the injury; (3) considering the balance of hardships between the plaintiff and the defendant, an injunction is warranted; and (4) the injunction will not disserve the public interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Except for a few outliers, courts do not analyze, or require satisfaction of, those four elements in deciding whether to grant injunctive relief in a statutory interpleader action, presumably because of the nature of an interpleader action and the permissive language in § 2361. *See* 28 U.S.C. § 2361 ("[A] district court *may … enter its order restraining [all claimants] from instituting or prosecuting any proceeding … affecting the … obligation involved in the interpleader action* until further order of the court [and] … *may* discharge the plaintiff from further liability, *make the injunction permanent*, and make all appropriate orders to enforce its judgment.") (emphasis added); *cf. Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996–97 (5th Cir. 1985) (holding district court erred in basing injunctive relief on § 2361 because the stakeholder proceeded under Rule 22 only and holding that

Cir. 2017) (citing *Zelaya/Capital Int'l Judgment, LLC v. Zelaya*, 769 F.3d 1296, 1300 (11th Cir. 2014), and *Auto Parts Mfg.*, 782 F.3d at 192); *see also Practice in Interpleader Actions—Injunctions Against Other Judicial Proceedings*, 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1717 (3d ed. Oct. 2020 update) ("The court has extensive discretion under [§ 2361] with regard to the issuance and the scope of the order.").

Because the deposited fund "itself is the target of the claimants" and "marks the outer limits of the controversy," "[i]t is … reasonable and sensible that interpleader, in discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation." *Tashire*, 386 U.S. at 534; *see also Zechariah Chafee, Jr., The Federal Interpleader Act of 1936*: I, 45 YALE L. J. 963, 963–64 (1936) ("Since the claimants are now enabled to assert their rights in the interpleader proceeding, an injunction is issued forbidding the claimants to bring any further proceedings directly against the stakeholder.").

An order granting injunctive relief must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in detail—and not by referring to the complaint or other document—the act or acts restrained or required."[16] Fed. R. Civ. P. 65(d)(1).

---

without the support of § 2361, the injunction had to be "tested by" the general standards for injunctions).

[16]The requirements for an order granting injunctive relief are in Rule 65. Other aspects of Rule 65 address temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65(a)–(c). The rule specifies, "These rules do not modify … 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader." Fed. R. Civ. P. 65(e). Here, New York Life requests only a permanent injunction. Nothing in

## B.    Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute." *Id.*

Under § 1335, a federal district court has jurisdiction over an insurer's interpleader action where jurisdiction is otherwise lacking if (1) the policy's value is $500 or more, (2) two or more adverse claimants of diverse citizenship claim or may claim entitlement to the policy benefits,[17] and (3) the insurer deposits the amount due under its obligation into the court's registry. 28 U.S.C. § 1335(a). "When claims for a sum of money only are involved, payment of the entire sum (or giving of a bond) is a condition precedent to the court's jurisdiction." *Austin v. Texas-Ohio Gas Co.*, 218 F.2d 739, 745 (5th Cir. 1955). Jurisdiction is not dependent on the merits of the claims of the defendants. *Mack v. Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010); *Bierman v. Marcus*, 246 F.2d 200, 202 (3d Cir. 1957); *John Hancock Mut. Life Ins. Co. v. Kraft*, 200 F.2d 952, 953 (2d Cir. 1953); *Hunter v. Fed. Life Ins. Co.*, 111 F.2d 551, 556 (8th Cir. 1940).

The United States Supreme Court recognizes a "probate exception" to otherwise proper federal jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). The exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate" and "precludes federal courts from endeavoring to dispose of property that is in the

---

the Rule 65 requirements for an order granting injunctive relief modifies or conflicts with § 2361.

[17]Complete diversity is not constitutionally required; an interpleader action under § 1335 can be based on minimal diversity, i.e., diversity between two or more adverse parties. *Tashire*, 386 U.S. at 530–31.

custody of a state probate court." *Id.* at 311–12. The exception is "limited in scope," applying only to an action requiring the federal court to (1) probate or annul a will, (2) administer an estate, or (3) dispose of property in the state probate court's custody. *Stuart v. Hatcher,* 757 F. App'x 807, 809 (11th Cir. 2018) (internal quotation marks omitted).

"[W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." *Markham v. Allen*, 326 U.S. 490, 494 (1946) (internal citations omitted).

Federal district courts routinely hold the probate exception does not preclude their jurisdiction over interpleader actions to determine the proper beneficiary of a death benefit in a life insurance policy because, while the interpleader action involves property that may become part of the estate, the court, in making that determination, is not probating or annulling a will, administering an estate, or disposing of property in the custody of the state probate court. *See, e.g.*, *New York Life Ins. Co. v. Apostolidis*, 841 F. Supp. 2d 711, 719 (E.D.N.Y. 2012); *New York Life Ins. Co. v. Kettenbeil*, No. 10-CV-2711 PKC GRB, 2013 WL 4775651, at *2 (E.D.N.Y. Sept. 6, 2013); *Casey Gerry Schenk Francavilla Blatt & Penfield LLP v. Estate of Cowan*, No. 10CV821-L BGS, 2011 WL 1225693, at *2–3 (S.D. Cal. Mar. 30, 2011); *John Hancock Variable Life, Ins. Co. v. 1st Source Bank*, No. 3:09-CV-430-TS, 2010 WL 1541181, at *3 (N.D. Ind. Apr. 16, 2010); *Sun Life Assur. Co. of Canada (U.S.) v. Gruber*, No. 05 Civ. 10194 NRB, 2006 WL 1520524, at *4 (S.D.N.Y. June 1,

2006); *see also Gustafson v. zumBrunnen*, 546 F.3d 398, 400 (7th Cir. 2008) ("The suit, though based ultimately on the will, is not within the probate exception to federal jurisdiction. The judgment sought would just add assets to the decedent's estate; it would not reallocate the estate's assets among contending claimants or otherwise interfere with the probate court's control over and administration of the estate."); *Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc.*, 918 F.2d 1065, 1072 (2d Cir. 1990) (holding the probate exception did not preclude the district court from issuing an injunction in an interpleader action by estate executors because (1) adjudication of whether assets were property of the estate does not interfere with the probate proceeding and (2) § 2361 "expressly authorizes injunctions in aid of federal interpleader and is the result of a deliberate congressional balancing of state and federal interests").

Florida law governing "[l]ife insurance policies [and the] disposition of proceeds" provides:

> (1) Whenever any person residing in the state shall die leaving insurance on his or her life, the said insurance shall inure exclusively to the benefit of the person for whose use and benefit such insurance is designated in the policy, and the proceeds thereof shall be exempt from the claims of creditors of the insured unless the insurance policy or a valid assignment thereof provides otherwise. Notwithstanding the foregoing, whenever the insurance, by designation or otherwise, is payable to the insured or to the insured's estate or to his or her executors, administrators, or assigns, the insurance proceeds shall become a part of the insured's estate for all purposes and shall be administered by the personal representative of the estate of the insured in accordance with the probate laws of the state in like manner as other assets of the insured's estate.

> (2) Payments as herein directed shall, in every such case, discharge the insurer from any further liability under the policy, and the insurer shall in no event be responsible for, or be required to see to, the application of such payments.

Fla. Stat. § 222.13; *accord Protective Life Ins. Co. v. Walker*, No. 8:09-CV-363-T-EAJ, 2010 WL 11628819, at *2 (M.D. Fla. Jan. 7, 2010) ("[U]nder Florida law the proceeds of a life insurance policy, payable to an individual beneficiary, do not pass through the estate of the deceased."); *see also Blechman v. Estate of Blechman*, 160 So. 3d 152, 157 (Fla. 4th DCA 2015) ("Estate planners frequently use non-probate mechanisms to transfer a decedent's property outside of the probate system. This can be accomplished in a myriad of ways, such as … life insurance … and any other contractual means. … The common thread of such non-probate mechanisms is that the assets to which they apply are distributed to the designated beneficiaries immediately upon the transferor's death without the need for judicial intervention.") (internal quotation marks omitted).

## C.    *Abstention*

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Thus, the pendency of a state proceeding generally is no bar to proceeding on the same matter in a federal court having jurisdiction. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013).

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."[18] *Colo. River*, 424 U.S. at 813. "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional

---

[18]Abstention may be raised by a court sua sponte. *Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976).

circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.*

Under the *Colorado River* abstention doctrine, a federal court may abstain if a parallel proceeding (i.e., substantially the same parties and substantially the same issues) is pending in state court and reasons concerning judicial administration demand abstention. *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013). "[W]hile abstention as a general matter is rare, *Colorado River* abstention is particularly rare[.]" *Id.* Considerations are:

> (1) whether the state or federal court has assumed jurisdiction over any property at issue;
>
> (2) the relative inconvenience of the federal forum;
>
> (3) the likelihood of "piecemeal litigation";
>
> (4) the order in which the courts obtained jurisdiction;
>
> (5) whether state or federal law will be applied;
>
> (6) whether the state court can adequately protect the parties' rights; and
>
> (7) the vexatious or reactive nature of either the federal or the state litigation.

*Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004).

In the interpleader context, in *Boston Old Colony Insurance Co. v. Balbin*, the former Fifth Circuit reaffirmed an earlier conclusion: "We consider it important that the usefulness of the statutory remedy of interpleader . . . should not be impaired by narrow and restrictive rulings. In such cases where

jurisdiction clearly appears, Federal District Courts do not have the right to decline to exercise that jurisdiction in litigation involving no important question of the public policy of the State." 591 F.2d 1040, 1044 (5th Cir. 1979) (quoted authority omitted). The court added, "[I]f jurisdiction had been properly invoked, it was the duty of the trial court to determine the issues unless unusual circumstances triggered rules based on comity which would necessitate relegating the complaint to the state court." *Id.* (quoted authority omitted).

Later, in the declaratory-judgment context, in *Wilton v. Seven Falls Co.*, the Supreme Court held the "discretionary standard" in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942)—not the exceptional circumstances standard for *Colorado River* abstention—governs a federal court's decision to stay a declaratory-judgment action during the pendency of a parallel state court proceeding. 515 U.S. 277, 289–90 (1995). The Court explained, "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court '*may* declare the rights and other legal relations of any interested party seeking such declaration.'" *Id.* at 286 (quoting 28 U.S.C. § 2201(a) (emphasis in original)). The Court added, "We have repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (internal quotation marks and quoted authority omitted). Considerations include:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005).

Despite the seemingly mandatory language of § 2361 ("Such district court shall hear and determine the case[.]"), the Second and Third Circuits hold the *Brillhart/Wilton* discretionary standard—not the exceptional circumstances for *Colorado River* abstention—applies in a statutory interpleader action seeking relief declaratory in nature. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 21–22 (2d Cir. 1997); *NYLife Distribs., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 382 (3d Cir. 1995); *accord In re $165,388.23 in Interpleaded Funds*, No. 5:20-CV-05063, 2020 WL 7083957, at *3 (W.D. Ark. Dec. 3, 2020). The Third Circuit emphasized that interpleader is

equitable, analyzed the language and structure of § 1335, and held the discretionary standard is more appropriate for an interpleader action. *NYLife*, 72 F.3d at 380–82.

District courts bound by former Fifth Circuit precedent disagree on whether the *Brillhart/Wilton* discretionary standard or the exceptional circumstances for *Colorado River* abstention applies in an interpleader action seeking relief declaratory in nature. Some hold *Brillhart* effectively overruled *Boston Old Colony*, find persuasive the reasoning in the Second and Third Circuits, and apply the *Brillhart/Wilton* discretionary standard. *See, e.g.*, *Espat v. Espat*, 56 F. Supp. 2d 1377, 1384 (M.D. Fla. 1999); *Am. Gen. Life Ins. Co. v. Lowe*, No. 2:15-CV-14111, 2015 WL 11251908-ROSENBERG/LYNCH, at *2 (S.D. Fla. Nov. 16, 2015); *Crommelin v. Woodfield*, No. 95-8697-CIV-DAVIS, 1998 WL 188101, at *3 (S.D. Fla. Mar. 2, 1998). Some hold *Boston Old Colony* remains good law because the later Supreme Court cases addressed only actions under the Declaratory Judgment Act and require the exceptional circumstances for *Colorado River* abstention. *See, e.g.*, *West Side Transport, Inc. v. APAC Miss., Inc.*, 237 F. Supp. 2d 707, 714 (S.D. Miss. 2002); *Vance v. Shulman*, No. H-09-4115, 2010 WL 3717305, at *3 (S.D. Tex. Sept. 17, 2010); *Chaffee McCall, LLP v. World Trade Ctr. of New Orleans*, No. 08-4432, 2009 WL 322156, at *8 (E.D. La. Feb. 9, 2009); *see also Cont'l Cas. Co. v. Duyzend*, No. C13-1508 MJP, 2014 WL 34400, at *2 (W.D. Wash. Jan. 6, 2014) ("The logic behind the high degree of discretion afforded district courts under *Brillhart* in the declaratory judgment context rests in large part on the text of the Declaratory Judgment Act and the traditional understanding of declaratory judgment actions. … The text of [that Act] is not, however, applicable to statutory interpleader actions.").

## D.    *Default and Default Judgment*

A defendant must answer a complaint within 21 days after service of process or 60 days after waiver of service of process. Fed. R. Civ. P. 12(a)(1)(A). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

"If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

By defaulting, a defendant admits the plaintiff's well-pleaded factual allegations. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). Before entering default judgment, the Court must ensure that those allegations state a claim upon which relief may be granted. *Nishimatsu Constr. Co., Ltd., v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

In an interpleader action, default judgment can be entered against a defaulting defendant. *See, e.g.*, *Trustmark Ins. Co. v. White*, No. 3:18-cv-1177-J-34JBT, 2019 WL 4918363, at *1 (M.D. Fla. Oct. 4, 2019); *Metro. Life Ins. Co. v. Jackson*, No. 3:11-cv-967-J-34JRK, 2013 WL 3974674, at *5 (M.D. Fla. Aug. 1, 2013). "The failure of a named interpleader defendant to answer the interpleader complaint and assert a claim to the *res* can be viewed as forfeiting

any claim of entitlement that might have been asserted." *Gen. Accident Grp. v. Gagliardi*, 593 F. Supp. 1080, 1089 (D. Conn. 1984).

Permitting default judgment against a defaulting defendant in an interpleader action "protect[s] the interpleader plaintiff and other defendants by removing from the litigation any party who expresses no interest in the *res* of the dispute." *Protective Life Ins. Co. v. Tinney*, No. 2:14-cv-02251-TMP, 2015 WL 1402464, at *4 (N.D. Ala. Mar. 25, 2015). "Without the ability to enter a default judgment against an interpleader defendant who refuses to appear in the action, the court is unable to provide relief to the remaining defendants." *Id.* "If an interpleader defendant can prevent the resolution of an interpleader by simply refusing to appear in the action, the court cannot effectively and finally address the distribution of the interpleader *res*." *Id.*

### E.     The Servicemembers Civil Relief Act

Under the Servicemembers Civil Relief Act, for "any civil action … in which the defendant does not make an appearance," the court, "before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit—(A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or (B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service." 50 U.S.C. § 3931(b)(1). "The requirement for an affidavit … may be satisfied by a statement, declaration, verification, or certificate, in writing, subscribed and certified or declared to be true under penalty of perjury." *Id.* § 3931(b)(4). Knowing falsity is a crime. *Id.* § 3931(c).

If "it appears that the defendant is in military service, the court may not enter a judgment until after the court appoints an attorney to represent the defendant." *Id.* § 3931(b)(2). "If based upon the affidavits filed in such an action, the court is unable to determine whether the defendant is in military service, the court, before entering judgment, may require the plaintiff to file a bond in an amount approved by the court." *Id.* § 3931(b)(3).

## F.    *Final Judgment*

Under Federal Rule of Civil Procedure 54(b), "when multiple parties are involved [in an action], the court may direct entry of a final judgment as to one or more, but fewer than all, … parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). "Otherwise, any order or other decision, however designated, that adjudicates fewer than all … the rights and liabilities of fewer than all the parties does not end the action as to any of the … parties and may be revised at any time before the entry of a judgment adjudicating … all the parties' rights and liabilities." *Id.*; *see Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777 (11th Cir. 2007) ("Ordinarily, ... an order adjudicating fewer than all the claims in a suit, or adjudicating the rights and liabilities of fewer than all the parties, is not a final judgment from which an appeal may be taken.").

"To determine whether an order is certifiable under Rule 54(b), a district court engages in a two-step process." *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1127 (11th Cir. 2018). "First, the court must decide whether the order is both final and a judgment." *Id.* (internal quotation marks omitted). An order is final if it "disposes entirely of a separable claim or dismisses a party entirely[.]" *Lloyd*, 483 F.3d at 779. "Then, it must determine that there is no just reason for delay in permitting the parties to appeal its decision

29

immediately." *Commodores*, 879 F.3d at 1127 (internal quotation marks omitted). In doing so, the district court acts as a "dispatcher" and exercises "its discretion in certifying partial judgments in consideration of judicial administrative interests ... and the equities involved." *Lloyd*, 483 F.3d at 779 (internal quotation marks omitted). The Eleventh Circuit has cautioned district courts to "conservatively" exercise their discretion to enter early judgment. *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997).

In an interpleader action, without the "no just reason for delay" finding, an order granting interpleader is interlocutory "'even though the stakeholder is disinterested; the rival claims of the interpleaded parties call the provisions of Rule 54(b) into play.'" *Abex Corp. v. Ski's Enters., Inc.*, 748 F.2d 513, 515 (9th Cir. 1984) (quoting 3A MOORE, FEDERAL PRACTICE, ¶ 22.14[6] (2d ed. 1981)); *see also Diamond Shamrock Oil and Gas Corp. v. Comm'r of Revenues, State of Ark.*, 422 F.2d 532, 534 (8th Cir. 1970) (holding that even if an opinion in interpleader action was a judgment, where the action involved numerous adverse claimants, the opinion was not final).

## III.   Analysis

### A.   *New York Life has established that interpleader is an appropriate mechanism for resolving the dispute and discharge and an injunction are warranted.*

In this first stage, New York Life has established that interpleader is an appropriate mechanism for resolving the dispute over the proper beneficiary or beneficiaries of the death benefit and that discharge and an injunction are warranted. No appearing or defaulting defendant contends otherwise.

Specifically, New York Life has established that the death benefit became payable under the policy when Melba died, New York Life has no interest in who should be the beneficiary of the death benefit, New York Life confronts at least five separately filed claims for the death benefit, and New York Life has deposited the full amount of its legal obligation under the life insurance policy into the Court's registry. *See Prudential Ins. Co. of Am. v. Hearndon*, No. 6:19-cv-141-Orl-37TBS, 2019 WL 5592470, at *2 (M.D. Fla. May 13, 2019)(holding, under analogous circumstances, "There is no question that Prudential faces competing claims to the Death Benefit. The parties jointly filed the Interpleader Motion and agree that Prudential claims no interest to the Death Benefit. … Thus, interpleader is clearly appropriate here and Prudential is due to be discharged from the action upon depositing the Death Benefit with the Court registry.").

New York Life has established the appropriateness of interpleader: through the policy itself, Doc. 1-1; through the complaint allegations admitted by the responding parties in their answer (Rebecca and the Estate) and not denied by the only other responding parties in their pro se letters (Dwaine and Michael), Doc. 1 ¶¶ 16, 34; Doc. 22 ¶¶ 16, 34; *see generally* Docs. 27, 28; through the claim forms submitted by Walter, Doc. 1-6, Janice, Doc. 1-9, Dwaine, Doc. 1-10, Michael, Doc. 1-12, and Rebecca on behalf of the Estate, Doc. 1-7; and through the letter by counsel on behalf of the Estate, Doc. 1-8.

Because New York Life has established that interpleader is an appropriate mechanism for resolving the dispute over the proper beneficiary or beneficiaries of the death benefit, and because New York Life has discharged all of its legal obligations to the claimants by depositing the death benefit and interest into the Court's registry, Docs. 7, 8, discharge is appropriate.

Beyond that relief, exercising discretion to grant a permanent injunction is appropriate. Although the record does not show or suggest any claimant or potential claimant has stated an intent to sue New York Life over the death benefit, an injunction is one of the remedies permitted under § 2361 in a statutory interpleader action, and an injunction will preempt possible litigation by represented or pro se claimants fueled by the continuing family feud. No appearing defendant objects to an injunction, and no defaulting defendant has appeared to state a position on an injunction.

Mirroring the language of § 2361, complying with the Rule 65 requirements for an order granting injunctive relief, and in accord with previous interpleader injunctive language used by this Court,[19] appropriate language is: "The Court permanently enjoins Hubert Dwaine Crummy, Janice Latrelle Crawford, James Michael Crummey, Randy Crummey, Walter Wayne Crummey, Rebecca Kneeland (individually and as personal representative of the Estate of Melba Blankenship), the Estate of Melba Blankenship, and Oxley-Heard Funeral Directors from instituting or prosecuting any proceeding in any State or United States court affecting the death benefit." *See* 28 U.S.C. § 2361 (permitting court to enter permanent injunction restraining claimants from "instituting or prosecuting any proceeding in any State or United States

---

[19]*See John Hancock Life Ins. Co. (U.S.A.) v. Intemann*, No. 3:13-cv-1130-J-34JRK, Doc. 47 (M.D. Fla. July 24, 2014)("Defendants are enjoined from making any further claims against Plaintiff on the account of the policies at issue in this matter."); *Jackson*, 2013 WL 3974674, at *1 ("Defendants are hereby restrained and enjoined from instituting any action against Plaintiff, the Plan, and KAR Holdings, Inc. for the recovery of the Plan Benefits, plus any applicable interest."); *Metro. Life Ins. Co. v. Taylor*, No. 3:11-cv-334-J-34JBT, 2011 WL 4632876, at *1 (M.D. Fla. Oct. 6, 2011)("Defendants are restrained and enjoined from instituting any action or proceeding in any state or federal court against Plaintiff, Norfolk, or the Plan for recovery of the subject funds and/or any applicable interest.").

court affecting the property, instrument or obligation involved in the interpleader action").

The language proposed by New York Life differs from, and is arguably more expansive than, the language in § 2361 and the language in the complaint.[20] Adopting the language is unwarranted because New York Life provides no authority or argument for it.

Thus, New York Life has established that interpleader is an appropriate mechanism for resolving the dispute and discharge and an injunction are warranted.

**B.    *This Court has subject-matter jurisdiction.***

The Court has subject-matter jurisdiction. As determined earlier based on the Florida, Georgia, and West Virginia citizenship of the claimants and the $25,000 amount of the death benefit, the first and second elements are satisfied, Doc. 4, and New York Life since has satisfied the third element by depositing the full value of the death benefit and interest into the court's registry, Docs. 7, 8.

---

[20]*Compare* 28 U.S.C. § 2361 (providing that a court can "enter its order restraining [claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court") *and* Doc. 1 at 6 (asking the Court to enter judgment "enjoining the Defendants from instituting or prosecuting any proceeding in any state or United States court affecting the Death Benefit and/or the Policy") *with* Docs. 51-1 at 1–2, 60-1 at 1–2 ("The Defendants are hereby permanently enjoined from making any further actual or implied claims, demands and causes of action, asserted or unasserted, express or implied, foreseen or unforeseen, real or imaginary, suspected or unsuspected, known or unknown, liquidated or unliquidated, of any kind or nature or description whatsoever, that the Defendants, jointly and severally, ever had, presently have, may have, or claim or assert to have, or hereinafter have, may have, or claim or assert to have, against the Company with respect to the Death Benefit and/or the Insured's coverage under the Policy[.]").

Despite the pendency of the proceedings in the probate court, the probate exception does not apply. To decide the dispute, this Court need not probate or annul Melba's will, administer Melba's estate, or dispose of property in the probate court's custody. Rather, to decide the remainder of the dispute, this Court need only interpret the insurance policy in accordance with contract law, decide the proper beneficiary of the death benefit, and disperse the $31,275.26 in its registry.

Thus, the Court has subject-matter jurisdiction.

## C.   *Abstention is unwarranted.*

Abstention is unwarranted whether applying the *Brillhart/Wilton* discretionary standard or the exceptional circumstances standard for *Colorado River* abstention. And because the outcome is the same under either standard, this Court need not (and in the interest of judicial economy and without briefing on the subject should not) decide which one applies here.[21] *See 1st Source Bank*, 2010 WL 1541181, at *3–4 (declining to resolve that issue because abstention from interpleader action in light of state court probate case was unwarranted under either standard).

The value of the death benefit and interest is in this Court's registry and not currently property of the Estate. Docs. 7, 8. No one suggests this forum is inconvenient, and with virtual filings and the ability to conduct most proceedings by telephone or video teleconference, this forum is not

---

[21]Likewise, deciding whether this interpleader action and the probate case are parallel is unnecessary and unwarranted. *See Metro. Life Ins. Co. v. Lawless*, No. 19-13688(MAS)(ZNQ), 2019 WL 6050755, at *7 (D. N.J. Nov. 15, 2019)(holding an interpleader action by an insurer and a probate case were not parallel, at least during first stage, because the insurer has no interest in the funds and is not a party to the probate case).

inconvenient. Piecemeal litigation in the form of claimant lawsuits may be more of an issue if this Court declines to provide interpleader relief. This litigation is not vexatious or used for procedural fencing. The State of Florida's interest in having the issue of the beneficiary decided in state court does not appear strong because of the absence of state policy matters, and interpleader relief would neither create friction between the courts nor improperly encroach on the probate court's jurisdiction. Judgment here will settle the controversy concerning the proper beneficiary and otherwise serve a useful purpose in clarifying the legal relations at issue. The parties do not suggest that an alternative remedy to declaring the beneficiary is available. Because contract law decides the beneficiary, underlying factual issues do not appear to be important to an informed resolution of the case.

Thus, abstention is unwarranted.

### D.   New York Life has established that entry of default judgment against the defaulting defendants is appropriate.

New York Life has established that default judgment against Janice, Randy, Walter, and Oxley-Heard Funeral Directors is appropriate.

Those defendants failed to answer the complaint after proper service as shown by the executed waivers of service of process for Janice and Oxley-Heard Funeral Directors and the executed returns of service stating, under penalty of perjury, that Randy and Walter had been personally served with process. Docs. 6, 20, 24, 25, 29–32. Because those defendants were properly served with process, under § 2361, the Court has personal jurisdiction over them.

Those defendants are not minors, legally incompetent, or currently in the military or otherwise entitled to relief under the provisions of the

Servicemembers Civil Relief Act, as shown by counsel's declaration and proof from the Department of Defense status reports (and additionally, for Randy, his sibling's confirmation). Doc. 29 ¶ 6; Doc. 30 ¶ 6; Doc. 31 ¶ 6; Doc. 32 ¶ 6; Docs. 68, 68-1, 68-2; Docs. 70, 70-1, 70-2; Doc. 71.

The clerk entered defaults against them. Docs. 33–36. By defaulting, they admit New York Life's well-pleaded factual allegations, and, as determined, those allegations and the accompanying exhibits show statutory interpleader is appropriate. Permitting default judgment against them protects New York Life and the appearing defendants by removing from the action parties who have expressed no interest in the death benefit.

Thus, New York Life has established that default judgment against Janice, Randy, Walter, and Oxley-Heard Funeral Directors is appropriate.

**E.     New York Life has not established that a "no just reason for delay" finding is appropriate.**

Declining to include a "no just reason for delay" finding in the order on New York Life's motion is appropriate because New York Life merely added the finding to its unauthorized proposed order without requesting the finding in its motion and addressing the law in its memorandum of law. *See generally* Doc. 51; Doc. 51-1 at 2; Doc. 60-1 at 2; *see John Hancock Life Ins. Co. (U.S.A) v. Orr*, No. 6:15-cv-317-ORL-18TBS, 2015 WL 4470506, at *4 (M.D. Fla. July 21, 2015)("Because Plaintiff has not explained why the Court should enter final judgment permitting it to deposit the annuity funds into the Court's registry and discharging it from liability, I recommend against the entry of judgment in Plaintiff's favor at this time. Instead, I recommend the Court defer entry of judgment in Plaintiff's favor until it can enter one judgment for Plaintiff as to all Defendants.").

Besides, entering a final judgment for New York Life now and determining the rightful beneficiary or beneficiaries of the death benefit later could result in two separate appeals by one or more dissatisfied claimants (one challenging the decision in the first phase—during litigation of the second phase—; and one challenging the decision in the second phase), which hardly seems to further judicial administrative interests.

Thus, New York Life has not established that a "no just reason for delay" finding is appropriate.

## IV.    Recommendation[22]

I recommend:

(1)   **granting** New York Life's motion, Doc. 51 ("Amended Motion for Default Judgment, Discharge, and Dismissal") except to the extent New York Life requests entry of its proposed order and a "no just reason for delay" finding;

(2)   **entering** default judgment against Janice Latrelle Crawford, Randy Crummey, Walter Wayne Crummey, and Oxley-Heard Funeral Directors and terminate their respective interest, if any, in the death benefit and interest;

(3)   **discharging** New York Life from liability to Janice Latrelle Crawford, Hubert Dwaine Crummey, James Michael Crummey, Randy Crummey, Walter Wayne Crummey, Rebecca Kneeland (individually and as personal

---

[22]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

representative of the Estate of Melba Blankenship), the Estate of Melba Blankenship, and Oxley-Heard Funeral Directors relating to the death benefit under individual life insurance certificate A2984335, which, with interest, is the money deposited into the Court's registry;

(4)     **permanently enjoining** Janice Latrelle Crawford, Hubert Dwaine Crummey, James Michael Crummey, Randy Crummey, Walter Wayne Crummey, Rebecca Kneeland (individually and as personal representative of the Estate of Melba Blankenship), the Estate of Melba Blankenship, and Oxley-Heard Funeral Directors from instituting or prosecuting any proceeding in any State or United States court affecting the death benefit;

(5)     **dismissing** New York Life Insurance Company from the action with prejudice; and

(6)     **continuing** the action as between the non-defaulting defendants regarding their competing claims to the death benefit which, with interest, is the money deposited into the Court's registry.[23]

**Entered** in Jacksonville, Florida, on January 19, 2021.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

---

[23]The case management and scheduling order remains in effect, with a non-jury trial set for the June 2021 trial term. Doc. 45.

Attachment

c:    Counsel of record

    Janice Latrelle Crawford
    1722 Caine Rd.
    Baxley, GA 31513

    Hubert Dwaine Crummey
    191 Amos Singletary Rd.
    Nashville, GA 31639

    James Michael Crummey
    5326 Old Field Cemetery Rd.
    Baxley, GA 31513

    Randy Crummey
    612 Kate Mann Rd.
    Baxley, GA 31513

    Walter Wayne Crummey
    98 Lamar Crosby Rd.
    Baxley, GA 31513

    Oxley-Heard Funeral Directors
    1305 Atlantic Ave.
    Fernandina Beach, FL 32034